EXHIBIT "A"

Bakhtiyar Khasratov                          8609568538       p.6

# BROKER/CARRIER AGREEMENT

This Agreement is made and entered into on the _24_ th day of _January_, 20_13_ by and between Greatwide Dallas Mavis, LLC, here and after referred to as ("Broker") and _Simbad LLC._ _____ (MC# _791528_) to as ("Carrier").

1. **TERM:** The Term of this agreement shall be for one (1) year and shall automatically renew for a successive one (1) year period: provided, however, that this agreement may be terminated at any time by giving thirty (30) days prior written notice.

2. **CARRIER'S OPERATING AUTHORITY AND COMPLAINCE WITH LAW.** Carrier represents and warrants that it is duly and legally qualified to provide the transportation services contemplated herein as a contract carrier, and carrier agrees to comply with all federal, state and local laws regarding the provision of such services.

3. **SPECIFIED SERVICES.** Carrier's service under this agreement is specifically designed to meet the distinct needs of BROKER under the specified rates and conditions set forth herein.

4. **RECEIPTS AND BILLS OF LADING.** Each shipment hereunder shall be evidenced by a receipt in such form as specified by broker or, alternatively, by broker's customer signed by carrier Showing the kind and quantity of product received by carrier at origin. The absence or loss of any such receipt shall not relieve carrier of its obligations and responsibilities with respect to any Shipment made hereunder. Such receipt shall be prima fascia evidence of receipt of such shipment in Good order and condition unless otherwise noted on the face of such receipt by carrier. Upon Delivery of each shipment made hereunder, carrier shall obtain a destination specified by broker, and carrier shall case such receipt to be signed by the consignee. Any terms, conditions and Provisions of the bill of lading, manifest or other form of receipt or contract shall be subject and subordinate to the terms, conditions and provisions of this agreement. Carrier shall notify Broker immediately of any exception made on the bill of lading, manifest or other receipt.

5. **CARRIER'S OPERATIONS AND EMPLOYEES.** Carrier shall, at its sole cost and expense: (a) Furnish all equipment necessary or required for the performance of its obligations hereunder (the "Equipment") (b) Pay all expenses related, in any way, with the use and operation of the equipment maintains the equipment in good repair, mechanical condition and appearance: and (d) utilize only competent, able and legally licensed personnel. Carrier shall full control of such personnel and shall perform the services hereunder as an independent contractor.

6. **INDEMNITY.** Carrier shall defend, indemnify, and hold harmless broker from and against all loss, damage, expense, cost, including reasonable attorney fees, fines actions and claims for injury to persons (including death) and for damage to property arising out of or in connection with carrier's failure to comply with the terms of this agreement or carrier's loading, handling, transportation, unloading or delivery of any shipments made hereunder.

7. **INSURANCE.** Carrier shall procure and maintain, at its sole cost and expense, liability insurance with a reputable and financially responsible insurance carrier insuring carrier against liability for personal injury (including death) and property damage in an amount not less than $1,000,000.00 per occurrence, and claims, damage or loss of or damage to freight in an amount not less than $100,000.00 per occurrence, and any additional insurance that may be required by

_A.N_

applicable law. Carrier must provide to broker proof of cargo insurance for shipments exceeding $100,000 in value and furthermore, broker will not accept any released value provision limiting liability unless approved by carrier as agreed. Carrier will cause broker to be named as a certificate holder on such insurance, and shall furnish to broker written certificates obtained from the insurance carrier showing that such insurance has procured, is being properly maintained, the expiration date, and specifying that written notice of cancellation or modification. Upon request, carrier shall provide broker with copies of the applicable insurance policies.

8. **FREIGHT LOSS, DAMAGE OR DELAY,** Broker shall submit to carrier written notice of any cargo claim, including loss or expenses resulting from carriers delay in providing service, within twelve (12) months of the delivery date of this shipment, or , if no delivery, the date of the occurrence resulting in the claim. The filing, processing and disposition of all cargo claims shall be governed by 49 C.F.R. 1005 et seq. The parties agree that federal common carrier laws of liability (i.e. Carmack Amendment Liability) shall apply to all shipments being transported by carrier under this agreement. In addition, however, carrier shall be liable to broker or broker's customer for all economic loss, including consequential damages, that are incurred by broker or broker's customers for any freight loss, damage or delay claim.

9. **WAIVER OF CARRIER'S LIEN.** Carrier shall not withhold any goods of broker's customer on Account of any dispute as to prices or any alleged failure of broker to pay charges incurred under this agreement. Carrier is relying upon the general credit of broker and hereby waives and releases all liens which carrier might otherwise have to any goods of broker's customers in the possession or control of carrier.

10. **PAYMENTS.** Carrier will charge and broker will pay for transportation services performed under this agreement the rates and charges as shown on the schedule of rate attached as appendix A and any written supplements of revisions thereto signed and agreed to by carrier and broker. Payment by broker will be made within thirty (30) days of receipt broker of carrier's freight bill, bill of lading , clear delivery receipt, and any other necessary billing documents enabling broker to ascertain that service has been provided at the agreed upon charge. In the event service is provided and it is subsequently discovered that there was no applicable rate in the existing schedule of rates or supplements, the parties agree that the rate paid by broker and collected by carrier shall be the agreed upon contract rate. In no event shall broker be liable for any transportation charges for which broker did not have primary responsibility for payment under the circumstances surrounding the involved shipment. Carrier agrees that broker is solely liable for all freight charges related to the transportation provided herein, and, as such, carrier agrees to refrain from all collection efforts against the shipper, receiver, consignor, consignee, or broker's customers. Broker may deduct from any payment any amount carrier is indebted to broker, including freight loss, damage and delay claims.

11. **CARRIER WILL NOT SOLICIT BROKERS'S CUSTOMER.** Carrier will not solicit traffic from any shipper, consignor, consignee or customer of broker where (1) the availability of such traffic first became known to carrier as a result of broker's efforts or (2) the traffic of the shipper, consignor, consignee or customer of broker was first tendered to carrier by broker. If carrier breaches this agreement and directly or indirectly solicits traffic from customers of broker and obtains traffic from such customer during the term of this agreement or for twelve (12) months thereafter. Carrier shall be obligated to pay broker, for a period of (15) months thereafter, commission in the amount of ten (10) percent (%) of the transportation revenue

resulting from traffic transported for such customer, and carrier shall provide broker with all documentation requested by broker to verify such transportation revenue.

12. **ASSIGNEMENT/MODIFICATION BENEFIT OF AGREEMENT.** This agreement may not be Assigned or transferred in whole or in part, and supersedes all other agreements and all tariffs, rates, classifications and schedules published, filed or otherwise maintained by carrier. This agreement shall be binding upon and endure to the benefit of the parties hereto.

13. **SEVERABILITY.** In the event that the operation of any portion of this agreement results in a violation of any law, the parties agree that such portion shall be severable and that the remaining provisions of this agreement shall continue in full force and effect.

14. **WAIVER.** Carrier and shipper expressly waive any and all rights and remedies allowed under 49 U.S.C. 14101 to extent that such rights and remedies conflict with this agreement. Failure of broker to assist upon carrier's performance under this agreement or to exercise any right or privilege shall not be a waiver of any broker's rights or privileges herein.

15. **LAWS TO GOVERN.** This contract shall be interpreted according to the laws of the State of Pennsylvania.

_Simbad LLC_
CARRIER NAME

_[signature]_
SIGNATURE

_Aygul Mamedova_
PRINT NAME

_manager_
TITLE

_01/24/13_
DATE

GREATWIDE DALLAS MAVIS, LLC

_____
SIGNATURE

_____
PRINT NAME

_____
TITLE

_____
DATE

EXHIBIT "A"

## ***GREATWIDE DALLAS MAVIS LLC - BROKERAGE SERVICES***

2150 Cabot Boulevard West, Langhorne PA 19047 (800) 283-9700

### ADDENDUM TO BROKER/CONTRACT CARRIER AGREEMENT ON FILE

**Order:** G2920408  Page 1

| | |
|---|---|
| **Carrier:** SIMBAD LLC | **Contact:** DISPATCH |
| WETHERSFIELD CT 06109 | **Phone:** (860) 944-2965 |
| **Date:** 3/25/2019 | **Fax:** (860) 956-8538 |

**GREATWIDE DALLAS MAVIS LLC Order No:** G2920408

**PU 1**
Name: ALTON STEEL INC
Address: 5 CUT ST
City/State/Zip: ALTON, IL 62002
Phone: (618) 463-4490
Date: 3/25/2019 2:00:00 PM
Contact: RECEIVING

**SO 2**
Name:
Address:
City/State/Zip: PAINESVILLE, OH 44077
Phone:
Date: 3/26/2019 9:00:00 AM
Contact:

**Order Details:** Miles: 589  Weight: 40000  Pieces:  Temp: -  Hazmat: No
**Commodity:**
**UN Number:**

Thank you for agreeing to handle this load for the price below. These charges are confirmed by you billing to us with the paperwork required below.
Any changes to the charges must be confirmed verbally with a copy of this rate confirmation

**Carrier Linehaul Rate:** [redacted]
**Total Carrier Pay:** [redacted]
**Instructions:**

**Agreement**

FOR PAYMENT TO BE PROCESSED, YOU WILL NEED TO:

### Submit copy of this rate agreement, bill of lading with signed proof of delivery, and carrier invoice to Greatwide either via email to imaging@greatwide-tm.com or fax to 1-800-853-8836.

Carrier shall not sub-contract, broker or arrange for any third party transportation. We must be notified immediately of any problems such as delays, OS&D, detention, diversion, reconsignment or refusals. No payment will be made to carriers on detention, truck order not used, or damaged claims until DM is paid When Loading and/or unloading, any charges or service failure claims will be deducted from your freight bill.

**Bill freight to:** GREATWIDE DALLAS MAVIS LLC
2150 Cabot Boulevard West
Langhorne PA 19047

**MC#:** 277164

**Please sign and fax back to** Sherri Colborn Fax: 618-466-3142  Phone: 618-466-3868

SIGNATURE & Date  *Aygul Khasrat*  03.25.19  Greatwide Signature & Date

EXHIBIT "A"

## ***GREATWIDE DALLAS MAVIS LLC - BROKERAGE SERVICES***

2150 Cabot Boulevard West, Langhorne PA 19047 (800) 283-9700

## ADDENDUM TO BROKER/CONTRACT CARRIER AGREEMENT ON FILE

Order: **G2920408**  Page 1

| | | | |
|---|---|---|---|
| Carrier: | SIMBAD LLC | Contact: | DISPATCH |
| | WETHERSFIELD CT 06109 | Phone: | (860) 944-2965 |
| Date: | 3/25/2019 | Fax: | (860) 956-8538 |

GREATWIDE DALLAS MAVIS LLC Order No: **G2920408**

| | | | | |
|---|---|---|---|---|
| PU | 1 | Name: ALTON STEEL INC<br>Address: 5 CUT ST<br>City/State/Zip: ALTON, IL 62002<br>Phone: (618) 463-4490 | Date: | 3/25/2019 2:45:00 PM |
| | | | Contact: RECEIVING | |
| SO | 2 | Name: DYSON CORP<br>Address: 53 FREEDOM RD<br>City/State/Zip: PAINESVILLE, OH 44077<br>Phone: | Date: | 3/26/2019 9:00:00 AM |
| | | | Contact: | |

Order Details: Miles: 589    Weight: 40000    Pieces:    Temp: -    Hazmat: No
Commodity:
UN Number:

Thank you for agreeing to handle this load for the price below. These charges are confirmed by you billing to us with the paperwork required below.
Any changes to the charges must be confirmed verbally with a copy of this rate confirmation

Carrier Linehaul Rate: ███
Total Carrier Pay: ███
Instructions:

PICK UP APPT @245PM
PICK UP #93927
MUST CALL FOR DELIVERY.
RON 440-918-8695

EXHIBIT "A"

## ***GREATWIDE DALLAS MAVIS LLC - BROKERAGE SERVICES***

2150 Cabot Boulevard West, Langhorne PA 19047 (800) 283-9700

## ADDENDUM TO BROKER/CONTRACT CARRIER AGREEMENT ON FILE

Order: **G2920408**  Page  2

**Agreement**

FOR PAYMENT TO BE PROCESSED, YOU WILL NEED TO:

**Submit copy of this rate agreement, bill of lading with signed proof of delivery, and carrier invoice to Greatwide either via email to imaging@greatwide-tm.com or fax to 1-800-853-8836.**

Carrier shall not sub-contract, broker or arrange for any third party transportation. We must be notified immediately of any problems such as delays, OS&D, detention, diversion, reconsignment or refusals. No payment will be made to carriers on detention, truck order not used, or damaged claims until DM is paid When Loading and/or unloading, any charges or service failure claims will be deducted from your freight bill.

**Bill freight to:** GREATWIDE DALLAS MAVIS LLC   MC#: 277164
2150 Cabot Boulevard West
Langhorne PA 19047

**Please sign and fax back to** Sherri Colborn Fax: 618-466-3142   Phone: 618-466-3868

SIGNATURE & Date _____ 3/25/19  Greatwide Signature & Date _____